MCC:KLM:slg:2001V00406   ORIGINAL

FILED
HARRISBURG, PA

MAY 17 2001

MARY E. D'ANDREA, CLERK
Per _____
            Deputy Clerk

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

JAMES S. COLEMAN,          :
         Petitioner        :
                           :
    v.                     :    Civil No. 1:CV-01-0267
                           :    (Caldwell, J.)
SUSAN GERLINSKI, Warden,   :    (Mannion, M.J.)
         Respondent        :

### RESPONSE TO HABEAS CORPUS PETITION

#### Introduction

This is a habeas corpus petition brought by James S. Coleman against Susan Gerlinski, Warden of the Low Security Correctional Institution Allenwood, White Deer, Pennsylvania. Coleman alleges that the Federal Bureau of Prisons ("BOP") has miscalculated his sentence computation.

In seeking his immediate release, Coleman argues that the BOP improperly calculated his release date when he was transferred from the custody of the District of Columbia Department of Corrections to the BOP's custody. Coleman claims that the District of Columbia had credited his sentence with certain statutory good time credit and time spent on the street on parole, which credit the BOP supposedly reduced in violation of the ex post facto clause simply because he (Coleman) had been transferred to BOP custody. See Habeas Petition.

To the contrary, Coleman's sentence has been properly computed. Coleman's reliance on prior sentence calculations is misplaced because mistakes had occurred in those calculations. Those errors had occurred in calculating the amount of time Coleman was responsible for serving on a parole violator term and in calculating good time credits for days Coleman was on escape status. The BOP's correction of a sentence calculation error made by another prison official simply does not violate the ex post facto clause.

### Statement of the Case

On October 10, 1980, Coleman was arrested in the District of Columbia for the offense of assault with intent to commit rape. On November 18, 1981, Coleman received a 5 to 15 years sentence. (R. 2, ¶4; R. 11).[1] Related to this arrest and sentencing, Coleman was released on bond March 18, 1981, but was received back into custody on October 2, 1981, for a total of 207 days of pre-sentence jail credit.

On November 24, 1986, Coleman was paroled by the District of Columbia Board of Parole ("D.C. Parole Board"). (R. 3, ¶5, R. 13). In calculating the days remaining on Coleman's sentence 5 to 15-year sentence, the D.C. Department of Corrections began the sentence computation on November 18, 1981, Coleman's sentencing

---

[1] "R. ___" is the abbreviation for the Record respondent has filed in support of this habeas response.

2

date. The tentative full term date of 15 years would end on November 17, 1996. Jail credit for the 207 days imprisoned before sentencing was then subtracted to give a full term date of April 24, 1996. (R. 3, ¶7; R. 15).

From this date, 1,800 days of "good time" credit earned by Coleman while in prison was subtracted, resulting in a statutory release date of May 21, 1991. Therefore, when Coleman was paroled on November 24, 1986, he had 3,429 days remaining on his assault sentence. (R. 3, ¶7; R. 15).

On January 12, 1991, while on parole, Coleman was arrested in the District of Columbia for the offense of attempted burglary. Coleman received a 180-day sentence for committing this offense. (R. 3, ¶8; R. 17). Additionally, the D.C. Parole Board issued a parole violation warrant on May 21, 1991. (R. 4, ¶9; R. 19).

On June 11, 1991, Coleman completed service of his 180-day sentence for attempted burglary. At that time, the parole violation warrant was executed and Coleman began service of his parole violation term. (R. 4, ¶10).

Initially, the D.C. Department of Corrections calculated Coleman's parole violation term to include credit for the period of time he was on parole supervision ("street time") from April 11, 1987, to May 20, 1991, which resulted in a violator term of 1,941 days. (R. 21). By including credit for the street time, the D.C.

3

Department of Corrections computed Coleman's violator term to begin on June 11, 1991 for 1,941 days, with 17 days of jail credit then being given for a release date of September 17, 1996. (R. 4, ¶11; R. 21).

Based on a District of Columbia Court of Appeals decision, U.S. Parole Commission v. Noble, 711 A.2d 85 (D.C. 1997), however, all D.C. Code offenders who violate their parole forfeit all street time. In other words, Noble upheld the principle that a parolee **is not** entitled to credit against his or her sentence for time not incarcerated (i.e., "street time") when parole is later revoked. Therefore, the D.C. *Department of Corrections* recalculated Coleman's parole violator term to account for the fact that Coleman still had 3,439 days to serve of his original assault offense. (R. 5, ¶12).

As noted above, Coleman's parole violator term began on June 11, 1991. On September 25, 1992, while serving the parole violation term, Coleman escaped from prison. Coleman remained on escape status until his apprehension on January 25, 1997. (R. 5, ¶13). As a result, while on escape status, Coleman's sentence was inoperative (was not running) and did not resume until Coleman was apprehended. (R. 5, ¶14).

Regarding "inoperative time," Bureau of Prisons' Program Statement 5880.32, D.C. Sentence Computation Manual, Chapter Seven. Paragraph 7.2, reads:

4

> "There are no statutory provisions that define or discuss inoperative time. Both the BOP and D.C. Department of Corrections (DCDC) rely on 18 U.S.C. 3568 as support for holding sentences inoperative if the prisoner is removed from the custodian's primary custody for service of the sentence. Since section 3568 provides the statutory authority for commencement of sentence, then a sentence would stop running if the prisoner was removed from the primary custody of the responsible custodian that triggered the commencement of sentence. The courts have supported the application of inoperative time."

Paragraph 7.3 of the Bureau of Prisons' Program Statement 5880.32, <u>D.C. Sentence Computation Manual</u>, further provides, in part, that when a prisoner has escaped, "the sentence is inoperative beginning the day after escape through the day preceding the apprehension from escape." (R. 5-6, ¶14; R. 25). Accordingly, Coleman's sentence was inoperative from the period of time on escape, i.e., from September 25, 1992 to January 25, 1997, a total of 1,582 days. In addition to Coleman's parole violator term not running during the period he was on escape status, Coleman was not eligible to earn any good time credit during this period of time. (R. 5-6, ¶¶14-16).

After Coleman was committed to the BOP, which occurred on April 28, 2000 (<u>see</u> Habeas Petition, unnumbered 4/28/00 cop-out exhibit), it was discovered that the D.C. Department of Corrections erroneously had calculated Coleman's sentence to include good time for the period of time that Coleman was on escape status. Accordingly, the BOP recalculated Coleman's sentence to include

5

only the amount of good time credit applicable to the time Coleman was in custody. (R. 6, ¶15).

In addition to Coleman's escape from custody effecting the calculation of his parole violator term, Coleman was convicted in the District of Columbia for the offense of prison breach. On February 29, 2000, Coleman was sentenced to 6 to 18 months to run <u>consecutive</u> to his current parole violation term. (R. 6-7, ¶16; R. 29). Because the 6 to 18 month term fell under the Omnibus Criminal Justice Reform Amendment Act of 1994, Coleman was not eligible to earn any good time credit for this new sentence. (R. 6-7, ¶16).

Thus, in calculating Coleman's sentence, both Coleman's parole violation term (3,439 days) and his prison breach sentence (6 to 18 months) were combined together to establish a single term of 10 years, 11 months, and 1 day. In addition, the term had to be calculated to cover the time Coleman had been on escape status -- including correcting any application of good time credit that could not have occurred when Coleman was on escape status and his sentence was inoperative. (R. 7, ¶17). Accordingly, Coleman's projected release date from the combined sentences with all current good time credit is October 11, 2003 via mandatory parole. (R. 8, ¶18; R. 33).

This projected release date was made as follows: The computation for the current term began on June 11, 1991 (the day

the parole violator warrant was executed). Coleman's new sentence of 18 months for prison breach, plus the 3,439 days remaining on the parole violator term, were combined to give a tentative full term date of May 11, 2002. Then, the 1,582 days of inoperative time were added to reflect the days when Coleman was on escape status. In addition, 16 days of jail credit was subtracted, which gave a full term date of August 24, 2006. From that date, earned good time credit of 903 days was subtracted giving a statutory release date of March 4, 2004. Then, 145 days of the extra good time mistakenly included was subtracted giving a current projected release date of October 11, 2003. (R. 8-9, ¶¶19, 20; R. 33).

### Question Presented

Should Coleman's habeas petition be denied as Coleman's sentence has been properly computed in accordance with BOP policy and federal law because, first, at the time Coleman's parole was revoked, Coleman became responsible for serving all time owed on the violator term from the date of his release and, second, the time Coleman spent on escape status did not count toward fulfillment of his sentence nor toward earning good time credit?

Suggested answer in the affirmative.

7

## Argument

**COLEMAN'S HABEAS PETITION SHOULD BE DENIED AS COLEMAN'S SENTENCE HAS BEEN PROPERLY COMPUTED IN ACCORDANCE WITH BOP POLICY AND FEDERAL LAW BECAUSE, FIRST, AT THE TIME COLEMAN'S PAROLE WAS REVOKED, COLEMAN BECAME RESPONSIBLE FOR SERVING ALL TIME OWED ON THE VIOLATOR TERM FROM THE DATE OF HIS RELEASE AND, SECOND, THE TIME COLEMAN SPENT ON ESCAPE STATUS DID NOT COUNT TOWARD FULFILLMENT OF HIS SENTENCE NOR TOWARD EARNING GOOD TIME CREDIT.**

A. <u>The BOP Has Taken All DC Inmates Into Its Custody And Is Therefore Responsible To Compute The Sentences For Those Inmates</u>.

The Attorney General has delegated to the Director of the BOP the authority to exercise any of the powers and perform all of the duties imposed or conferred by law upon the Attorney General relating to the commitment, control, and treatment of persons charged with or convicted of offenses against the United States. See 28 C.F.R. §0.96. See also United States v. Wilson, 503 U.S. 329, 335, (1992); United States v. Pineyro, 112 F.3d 43, 45 (2nd Cir. 1997); Pinaud v. James, 851 F.2d 27, 30-31 (2nd Cir. 1988).

The BOP and the District of Columbia Department of Corrections have been housing prisoners for each other under various agreements and statutory provisions for more than fifty years. New legislation, the National Capital Revitalization and Self-Government Improvement Act of 1997, D.C. St. §24-1201, (hereinafter referred to as the District of Columbia Revitalization Act of 1997), placed responsibility for the incarceration and

8

treatment of *all* existing and future sentenced D.C. Code felony offenders with the BOP.

With the arrival of this sizable group of inmates from the D.C. Department of Corrections, it was necessary for the BOP to produce Program Statement 5880.032, <u>D.C. Sentence Computation Manual</u>. Coleman's sentence was computed in accordance with this policy as well as with federal law. (R. 2, ¶3; R. 23-27). See also <u>Rogers v. Barry</u>, 107 F.3d 923, 1997 WL 71766 (U.S.App.D.C. 1997)("Under the plain language of D.C. Code Ann. §§24-428 and 24-431, appellant was ineligible for and thus did not earn good time credits while on escape, because during that period he was not in conformity with the Department of Corrections' institutional rules and was not in custody or on parole)(attached).

B. **When Coleman's Parole Was Revoked, Coleman Became Responsible For Serving All Time Owed On That Violator Term From The Date Of His Release On Parole.**

Coleman's original sentence calculation began on November 18, 1981, the day of sentencing. The term in effect was 15 years, resulting in a tentative full term date of November 17, 1996. Jail credit of 207 days was subtracted from that, giving a full term date of April 24, 1996. Then, good time credit of 1,800 days was subtracted, giving a statutory release date of May 21, 1991. (R. 15). Thus, when Coleman was paroled on November 24, 1986, he had 3,439 days remaining to be served until his release date.

9

On January 12, 1991, while on parole supervision, Coleman was arrested for the D.C. Code offense of attempted burglary. Coleman received a sentence of 180 days. (R. 17). Additionally, on May 21, 1991, the D.C. Board of Parole issued a parole violation warrant. (R. 19). On June 11, 1991, the day Coleman completed service of his 180-day sentence for attempted burglary, the parole violation warrant was executed.

Coleman's parole violation term was initially calculated to include credit for the period of time he was on parole supervision ("street time") from April 11, 1987 to May 20, 1991, which resulted in a violator term of 1,941 days. (R. 21).

Based on the D.C. Court of Appeals decision, U.S. Parole Commission v. Noble, 711 A.2d 85 (D.C. 1986), all D.C. Code offenders who violate their parole forfeit all street time. In other words, Noble upheld the principle that a parolee is not entitled to credit against his or her sentence for time not incarcerated (i.e., "street time") when parole is later revoked. Therefore, *the District of Columbia* recalculated Coleman's initial parole violator term in accordance with the Noble decision, with Coleman then owing the entire 3,439 days of his parole violator term from when last released on parole on November 24, 1986.

10

C.  <u>The Time Coleman Was On Escape Status Is Considered "Inoperative" And Does Not Count Toward Fulfillment Of Coleman's Sentence; Furthermore, Coleman Cannot Earn Good Conduct Time While On Escape and His Sentence is Inoperative.</u>

BOP policy, specifically, Program Statement 5880.32, <u>District of Columbia Sentence Computation Manual</u>, explains sentence computation for inmates sentenced under the District of Columbia Code who enter the BOP. In regard to inoperative time, the manual explains:

> There are no U.S. Code or D.C. Code statutory provisions that define or discuss inoperative time. Both the Bureau of Prisons and the D.C. Department of Corrections (DCDC) rely on 18 U.S.C. §3568, Effective Date of Sentence (for offenses committed prior to November 1, 1987) and §3585(a), Commencement of Sentence (for offenses committed on or after November 1, 1987) as support for holding sentences inoperative if the prisoner is removed from the custodian's primary custody. Since both §3568 and §3585(a) provide the statutory authority for commencement of a sentence, then a sentence would stop running if the prisoner was removed from the primary custody of the responsible custodian that triggered the commencement of the sentence.

Chapter 7, paragraph 7.2 (R. 25).

Therefore, the time while Coleman was on escape status, (from his escape on September 25, 1992, to his apprehension on January 25, 1997), was "inoperative," i.e., was not running, and this period of time could not count toward fulfillment of his sentence. (R. 25). To permit otherwise, would totally reward an inmate for escaping from prison, which is an absurd result. Likewise, since Coleman's sentence was inoperative for the period of time on escape, Coleman obviously was not eligible to earn any

"good time" during that same period of time because he was not in custody.

When Coleman was committed to the BOP, it was discovered that the D.C. Department of Corrections had erroneously included good time credit for the period of time that Coleman was on escape. Accordingly, the BOP recalculated Coleman's sentence to include only the amount of good time applicable to the time he was in custody. (R. 6., ¶ 15). Correcting a sentence calculation error simply does not violate the ex post facto clause as Coleman claims in that it did not increase Coleman's sentence at all. See California Dept. of Corrections v. Morales, 514 U.S. 499, 506 n. (1995)(the key question when determining whether a law violates the ex post facto clause of the Constitution is whether the law "alters the definition of criminal conduct or increases the penalty by which a crime is punishable."); Stiver v. Meko, 130 F.3d 574, 578 (3rd Cir. 1997)(there is no ex post facto violation when the challenged regulation does not increase a defendant's punishment).

## Conclusion

For the above-stated reasons, Coleman's habeas petition should be denied.

Respectfully submitted,

MARTIN C. CARLSON
United States Attorney

*[signature]*

KATE L. MERSHIMER
Assistant U.S. Attorney
SHELLEY L. GRANT
Paralegal Specialist
228 Walnut Street
P.O. Box 11754
Harrisburg, PA 17108-1754
717-221-4482

Date: May 17, 2001

107 F.3d 923 (Table)
**Unpublished Disposition**

Page 1

**(Cite as: 107 F.3d 923, 1997 WL 71766 (D.C.Cir.), 323 U.S.App.D.C. 290)**

NOTICE: THIS IS AN UNPUBLISHED OPINION.

(The Court's decision is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. Use FI CTADC Rule 28 and FI CTADC Rule 36 for rules regarding the publication and citation of unpublished opinions.)

United States Court of Appeals, District of Columbia Circuit.

James W. ROGERS, Appellant,
v.
Marion S. BARRY, Jr., Mayor, District of Columbia, et al., Appellees.

No. 95-7124.

Jan. 28, 1997.

Appeal from the United States District Court for the District of Columbia, No. 94cv00183; James Robertson, Judge.

D.D.C.

AFFIRMED.

Before: GINSBURG, SENTELLE, and HENDERSON, Circuit Judges.

*JUDGMENT*

PER CURIAM.

**1 This appeal was considered on the record from the United States District Court for the District of Columbia and on the briefs filed by the parties. The court has determined that the issues presented occasion no need for an opinion. *See* D.C.Cir. Rule 36(b). It is

ORDERED and ADJUDGED that the district court's order filed May 3, 1995, be affirmed. Appellant's claim that the Parole Board denied him due process in rescinding its grant of parole was barred by *res judicata*, as the District of Columbia Court of Appeals decided that issue against him in affirming the denial of his habeas corpus petitions filed in the D.C. Superior Court. *See Allen v. McCurry*, 449 U.S. 90, 103-04 (1980) (issues actually litigated in a state-court proceeding are entitled to the same preclusive effect in a subsequent section 1983 action as they enjoy in the state where the judgment was rendered). Even were appellant's parole claim not barred by *res judicata*, it would be foreclosed by *Ellis v. District of Columbia*, 84 F.3d 1413 (D.C.Cir.1996) (District of Columbia parole regulations do not create in D.C. prisoners a constitutionally protected liberty interest in parole); *Jago v. Van Curen*, 454 U.S. 14 (1981) (decision to rescind parole not subject to due process protection where parole regulations do not give rise to a constitutionally protected liberty interest in parole).

Furthermore, the Department of Corrections did not violate appellant's due process rights in declining to count the eight-month period during which he was on **escape** as time served under his sentence without granting him a hearing. Assuming this claim was cognizable under 42 U.S.C. § 1983, it nonetheless failed to state a claim upon which relief could be granted. Appellant failed to identify any constitutional, statutory, or regulatory provision creating in him a right to have the time he was on **escape** counted as time served under his sentence or forbidding the Department of Corrections from treating it as inoperative. Thus, appellant was not entitled to due process when the Department of Corrections extended the time remaining on his sentence by the amount of time he spent on **escape**. The result is no different, moreover, if the court construes this claim as contesting the denial of **good time credits** without a hearing. Under the plain language of D.C. Code Ann. §§ 24-428 and 24-431, appellant was ineligible for and thus did not **earn good time credits** while on **escape**, because during that period he was not in conformity with the Department of Corrections' institutional rules and was not in custody or on parole. Because appellant did not **earn good time credit** while on **escape**, the decision to treat his **escape** time as inoperative did not involve forfeiture or withholding of **good time credits** and thus did not implicate the hearing requirement of D.C. Code Ann. § 24-432.

The Clerk is directed to withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. *See* D.C.Cir.Rule 41.

**2 *Per Curiam*

END OF DOCUMENT

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

JAMES S. COLEMAN,  :
    Petitioner  :
      :
    v.  :  Civil No. 1:CV-01-0267
      :  (Caldwell, J.)
SUSAN GERLINSKI, Warden,  :  (Mannion, M.J.)
    Respondent  :

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion as to be competent to serve papers.

That on May 17, 2001, she served a copy of the attached

**RESPONSE TO HABEAS CORPUS PETITION**

by placing said copy in a postpaid envelope addressed to the person hereinafter named, at the places and addresses stated below, which is the last known addresses, and by depositing said envelope and contents in the United States Mail in Harrisburg, Pennsylvania.

Addressee:

James S. Coleman
Reg. No. 09229-007
LSCI Allenwood
P.O. Box 1000
White Deer, PA 17887

*Shelley L. Grant*
SHELLEY L. GRANT
Paralegal Specialist